PER CURIAM.
The State of Florida appeals from a trial court Order Vacating Judgment & Sentence of the Defendant, Jean Joubert. We affirm.
The record reflects that the Defendant was convicted of murder in the second degree with a firearm on June 15, 2001. The Defendant was represented during the *1024 murder trial and his sentencing by Steven T. Scott. Scott filed a Notice of Appearance as the Defendant’s counsel on September 28, 2000.
Unknown to the State, the lower court, and the Defendant, Scott filed a petition for disciplinary resignation with the Supreme Court of Florida on March 80, 2001, along with his sworn affidavit. Scott’s sworn affidavit stated that he would cease representing clients after thirty days of signing the affidavit and that he would advise all of his then existing clients of his resignation from the Florida Bar. The Supreme Court of Florida accepted the uncontested petition for disciplinary resignation on May 24, 2001, and indicated that Scott’s resignation was accepted immediately. In its order granting Scott’s petition for disciplinary resignation, the Supreme Court noted that disciplinary resignation is tantamount to disbarment. Scott did not advise the Defendant of his disciplinary resignation.[1]
The Defendant’s trial took place on June 12, 13, 14, and 15, 2001. After the jury rendered its verdict on June 15, 2001, the Defendant was sentenced to life imprisonment on July 2, 2001. Scott appeared as counsel of record for the Defendant during the trial and sentencing phases. The Defendant filed a Notice of Appeal on July 20, 2002.
Kenneth P. Speiller, Esq. was retained to represent the Defendant on appeal. Speiller discovered that Scott had been granted a disciplinary resignation. The Defendant filed a motion to vacate his second degree murder conviction on March 29, 2002, alleging that Scott’s disciplinary resignation and disbarment, effective May 24, 2001, deprived the Defendant of effective assistance of counsel under the Sixth Amendment to the United States Constitution. The trial court conducted a hearing on the motion on April 18, 2002. The lower court granted the motion, concluding that the facts of this case constituted a per se violation of the Sixth Amendment. This appeal followed.
On appeal, the State contends that the trial court erred as a matter of law in granting the Motion to Vacate the Conviction as a per se violation of the Sixth Amendment. The State argues that, contrary to the conclusions of the trial court, the prior unrelated disbarment of the Defendant’s counsel does not constitute a per se violation of the Sixth Amendment without a showing of prejudice according to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that there is ample authority from both the Federal circuit level and the United States Supreme Court to support application of the Strickland test to assess any Sixth Amendment violation here.
In response, the Defendant argues that while Scott had, at one time, been authorized to represent people in courts of law, that authority had been withdrawn because of an ethical lapse on his part. The Florida Supreme Court believed that what Scott did was so serious that the imposition of the most severe penalty possible was imposed. The right to effective assistance of counsel means access to a licensed attorney, who is authorized to practice law in the jurisdiction in question. A disbarred, or even suspended, attorney is simply not “counsel” for purposes of “effective assistance of counsel.” The Defendant points out that because Scott was unauthorized to practice law at the time of the trial and sentencing in this *1025 case, (1) it cannot be said that the Defendant had counsel, (2) the Defendant did not make an intelligent waiver of his right to counsel, and (3) the foregoing acts as a jurisdictional bar to a valid conviction and sentence. We agree with the Defendant that the trial court did not err in granting the Defendant’s Motion to Vacate the conviction.
We begin by noting that the standard of review on this appeal is a de novo review because it presents a pure question of law. Armstrong v. Harris, 773 So.2d 7, 11 (Fla.2000). It is clear in Florida that the State may withdraw the privilege to practice law from those who abuse it. Lambdin v. State, 150 Fla. 814, 9 So.2d 192, 193 (1942). In addition, disbarment is reserved for those who should not be permitted to associate with the honorable members of the legal profession. The Florida Bar v. Hirsch, 342 So.2d 970, 971 (Fla.1977).
The State cites to Dolan v. State, 469 So.2d 142 (Fla. 3d DCA 1985) and White v. State, 464 So.2d 185 (Fla. 3d DCA 1985) in support of its position that Scott’s disbarment does not constitute a per se violation of the Sixth Amendment. However, we disagree with the State on the applicability of Dolan and White because the facts of Dolan and White are distinguishable from the facts here.
In Dolan, the defendant alleged that he was denied the effective assistance of counsel because his court-appointed attorney was suspended as a member of the Florida Bar because of the attorney’s failure to pay required bar dues. In holding that the defendant was not denied effective assistance of counsel solely because of his attorney’s suspension, this Court noted that an attorney who is suspended from the Florida Bar for “failure to pay the dues required by Article VIII, Florida Bar Integration Rule, is automatically entitled to reinstatement upon the filing of his petition and the payment of the dues.” Id. at 143. (citations omitted).
Similarly, in White, this Court held that the defendant was not denied his right to counsel merely because his court-appointed attorney was suspended from the practice of law in this state for failure to pay bar dues. In fact, this Court in White noted that decisions in other courts had uniformly declined to adopt a per se rule that an attorney’s suspension from the practice of law gives rise to a constitutional claim of denial of the right to counsel. White v. State, 464 So.2d at 186 (citations omitted). This Court stated that it was aligning itself with these decisions.
The suspensions in Dolan and White were unrelated to any disciplinary proceeding. These were violations that were merely technical ones. Reinstatement was purely ministerial.[2] All the attorney had to do was send a check to the Florida Bar. And as this Court in Dolan emphasized, quoting from Huckelbury v. State, 337 So.2d 400, 403 (Fla. 2d DCA 1976), the facts in Dolan dealt “with a person who merely failed to comply with some administrative prerequisite to membership in the Florida Bar, ...” Dolan, 469 So.2d at 143-44.
The facts of Huckelbury v. State are more analogous to the facts at hand. In Huckelbury, a person who had never been admitted to the Bar represented a criminal defendant who took a plea. The court ordered that the conviction and sentence be vacated and that the defendant be allowed to enter a new plea. The court found that *1026 the requirement for counsel was not fulfilled where the plea was entered upon the advice of someone who was an imposter in the legal profession. Id. at 403. The court stated,
We emphasize that we are not here dealing with a person who merely failed to comply with some administrative requirement prerequisite to membership in the Florida Bar. Rather, we are dealing with a situation where one without proper credentials as a lawyer in any state or federal jurisdiction posed as a lawyer. And, he who so posed has not been considered to be of sufficient moral fiber to bear the stamp of approval of the Florida Bar. Here, there was an actual and knowing misrepresentation on the part of Pearce to his client.

Id.

Similarly, in the instant case, at the time of the Defendant’s trial and sentencing, Scott was not a member of the Florida Bar. As the Defendant points out, each time he appeared in court on behalf of the Defendant for trial and sentencing, Scott was misrepresenting his status to the Defendant and to the court. Furthermore, Scott violated his sworn statement that he would cease representing clients and inform his clients of his resignation.
The State additionally contends that there is federal law that supports application of a Strickland analysis here, citing to United States v. Hoffman, 733 F.2d 596 (9th Cir.1984) and United States v. Mouzin, 785 F.2d 682 (9th Cir.1986). However, these cases are distinguishable. In Hoffman, the attorney was not suspended by the court in which the claim was being made until after the Defendant’s sentencing. In Mouzin, the attorney was disbarred from the appellate court during the course of the trial but was not disbarred by the trial court until after the trial had ended. These attorneys were authorized to practice law in the court in which the trials were taking place at the time of the trials. In the case at hand, however, at the time of the Defendant’s trial, Scott was not authorized to practice law in the circuit court of Florida.
Thus, based on the foregoing, we affirm the trial court’s Order granting the Defendant’s Motion to Vacate the conviction and sentence.
Affirmed.

. The basis for the petition for disciplinary resignation was raised by Aviation Sales Co., an apparent client of Scott's, and appears to involve the failure to keep accurate records, the failure to provide an accounting, and the misappropriation of funds.

. This opinion does not pertain to the situation where the attorney’s suspension is merely a ministerial or technical type of suspension, which the attorney, in essence, has the ability to remove by sending a check for bar dues, such as what occurred in Dolan and White.